UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA | : Mag. No. 14-3149 (JBC) |
| v. | : Hon. James B. Clark III |
| NITA K. PATEL and<br>KIRTISH N. PATEL | : **CRIMINAL COMPLAINT** |

I, James D. Boazzo, being duly sworn, state the following is true and correct to the best of my knowledge and belief:

SEE ATTACHMENT A

I further state that I am a Special Agent with the Federal Bureau of Investigation and that this Complaint is based on the following facts:

SEE ATTACHMENT B

continued on the attached page and made a part hereof.

_____
James D. Boazzo, Special Agent
Federal Bureau of Investigation

Sworn to before me and subscribed in my presence,
on June 9, 2014, at Newark, New Jersey

_____
HONORABLE JAMES .B. CLARK, III
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

From at least as early as in our about June 2012 through in or about June 2014, in Morris County, in the District of New Jersey, and elsewhere, defendants

NITA K. PATEL and
KIRTISH N. PATEL

knowingly and intentionally conspired and agreed with each other and others to execute a scheme and artifice to defraud the Medicare program, a health care benefits program as defined under Title 18, United States Code, Section 24(b), and to obtain, by means of false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of said health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services, contrary to Title 18, United States Code, Section 1347.

In violation of Title 18, United States Code, Sections 1349.

## ATTACHMENT B

I, James D. Boazzo, am a Special Agent with the Federal Bureau of Investigation. I have knowledge of the following facts based upon both my investigation and discussions with other law enforcement personnel and others. Because this affidavit is being submitted for the sole purpose of establishing probable cause to support the issuance of a complaint, I have not included each and every fact known to the government concerning this matter. Where statements of others are set forth herein, these statements are related in substance and in part. Where I assert that an event took place on a particular date, I am asserting that it took place on or about the date alleged.

**The Defendants**

1. At all times relevant to this Complaint:

    a. Defendant Nita K. Patel resided in Rockaway, New Jersey and was the owner of Heart Solutions, located in Parsippany, New Jersey.

    b. Defendant Kirtish N. Patel resided in Rockaway, New Jersey and was the principal officer of Biosound Medical Services, Inc., located in Parsippany, New Jersey.

    c. Neither Nita K. Patel nor Kirtish N. Patel was a licensed physician.

**The Medicare Program**

2. The Medicare program is a federal program established by the Social Security Act of 1965 (codified as amended in various sections of Title 42, United States Code) to provide medical services, medical equipment, and supplies to aged, blind, and disabled individuals who qualify under the Social Security Act (hereinafter "beneficiaries"). The Medicare Part B program is a federally funded supplemental insurance program that provides supplementary Medicare insurance benefits for individuals aged sixty-five or older and certain individuals who are disabled. The Medicare Part B program pays for medical services, including diagnostic testing, for beneficiaries.

**The Scheme to Defraud**

3. At all times relevant to this Complaint:

    a. Biosound Medical Services, Inc. was a mobile diagnostic company and a Medicare-approved provider of mobile diagnostic testing, including

      ultrasounds, echocardiograms, and nerve conduction studies since approximately 1999.

    b.  Heart Solutions was a mobile diagnostic company and a Medicare-approved provider of mobile diagnostic testing, including ultrasounds, echocardiograms, and nerve conduction studies since approximately 2011.

  4.  As providers of mobile diagnostic testing, no diagnostic testing or patient visits ever occurred at the office of Biosound Medical Services or Heart Solutions (collectively, "Biosound"). Rather, Biosound technicians would travel to the office of a primary care physician in the New York and New Jersey area to conduct diagnostic testing. After the testing was completed, Biosound was responsible for sending the tests to a "reading physician" – an appropriate specialist physician (e.g., cardiologist, neurologist) – to interpret the test results. After the reading physician prepared a report of that interpretation, Biosound was responsible for providing the report to the referring physician that ordered the testing.

  5.  Multiple former and current employees have informed law enforcement agents with the Federal Bureau of Investigation and the United States Department of Health and Human Services – Office of the Inspector General of health care fraud being perpetrated by Nita K. Patel and Kirtish N. Patel through Biosound.

  6.  As explained to law enforcement, rather than pay compensation to a reading physician in order to interpret the results, Kirtish N. Patel would instead regularly interpret the diagnostic results himself and then Nita K. Patel would either photocopy or electronically cut and paste a physician's signature onto a diagnostic report that was drafted by an employee of Biosound before forwarding it to the referring physician that ordered the testing.

  7.  Biosound would then bill Medicare and other payors for its performance of diagnostic testing and the reading physician's interpretation of the results and report.

  8.  Based on the report of health care fraud, on June 9, 2014, law enforcement officers executed a search warrant at the business office of Biosound located in Parsippany, New Jersey.

  9.  During and after the search of the business, defendant Nita K. Patel admitted to law enforcement officers, among other things, that she and defendant Kirtish N. Patel regularly forged photocopied physician signatures onto Biosound diagnostic test reports that had been interpreted by Kirtish N. Patel and not any physician. Nita K. Patel stated that she initially inserted the signatures using cut up pieces of paper and a photocopier, but later learned to cut and paste the signatures electronically.

10. Nita K. Patel estimated for law enforcement that, for the past two years, no reading physician was involved in approximately half of the diagnostic reports generated by Biosound.

11. The current and former employees corroborated Nita K. Patel's account, stating that they had observed Nita K. Patel and/or Kirtish N. Patel using both the computer and cut up pieces of paper and a photocopier to insert physician signatures on Biosound diagnostic reports.

12. The current and former employees also indicated to law enforcement that they had expressed their concerns to Kirtish N. Patel in or around September 2013 about how the Biosound diagnostic reports were being generated and asked to meet the reading physicians whose names were being inserted on the Biosound diagnostic reports. No such meeting was ever arranged by Nita K. Patel or Kirtish N. Patel.

13. Among other things, law enforcement officers discovered and seized a container of cut up pieces of paper bearing physician signatures from the offices of Biosound.